IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARK SILVA AND
SANDRA SILVA,

    Plaintiffs,

v.                                                                                                                             Civ. No. 22-370 KK/JFR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
ROBERT MALDONADO,

    Defendants.

## ORDER DENYING MOTION TO BIFURCATE AND STAY

This insurance coverage and bad faith dispute arises from a series of auto collisions and an ensuing battery committed by one driver against the other. Before the Court is Defendants' Motion to Bifurcate and Stay (the "Motion"). (Doc. 28.) For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

Plaintiffs allege that on June 7, 2021, Marcellus Sawyer ran his vehicle several times into the State Farm insured Dodge Ram Mr. Silva was driving. (Doc. 1-1.) Mr. Silva and Mr. Sawyer both got out of their vehicles and, when Mr. Silva was not looking, Mr. Sawyer punched him in the head, causing multiple fractures to his face. (*Id*.) Then, while Mr. Silva was on the ground, Mr. Sawyer broke Mr. Silva's ankle. (*Id*.)

Plaintiffs submitted a claim to State Farm seeking coverage under the stacked uninsured and unknown motorist ("UM") provisions of their State Farm policies on multiple vehicles, including a policy covering the Dodge Ram (the "Dodge Ram Policy"). (Doc. 1-1 at 13.) State

Farm denied the claim because it determined that Mr. Silva's injuries "did not arise out of the ownership, maintenance, or use of an uninsured motor vehicle," as required for coverage under the Dodge Ram Policy. (Docs. 1-1 at 67–68; 39 at 6; 39-4 at 3 (stating that State Farm will pay damages for "bodily injury . . . caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle").)

In their Complaint, in addition to seeking payment for Mr. Silva's injuries, Plaintiffs allege that Defendant Maldonado failed to properly inform them that they were entitled to "purchase [uninsured and underinsured motorist] coverage in an amount equal to the policies['] liability limits" and erroneously "informed Plaintiff Silva that he did not need UM/UIM coverage on the 2001 Dodge Ram because it 'ports' from the other . . . policies." (Doc. 1-1 at 13.) Plaintiffs allege, "Had the Defendants complied with New Mexico law, the Plaintiffs Silva would have available to them the total sum of $400,000 in underinsured motorists coverage" and seek "reformation of the policies to reflect New Mexico law and total available coverage to them of $400,000." (*Id.*)

Plaintiffs also allege that Defendants violated the New Mexico Unfair Insurance Practices Act ("UIPA") by, *inter alia*, "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue," "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," and "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies." (*Id*. at 17–18); N.M. STAT. ANN. §§59A-16-1, *et seq*. Plaintiffs seek reformation of their State Farm policies to include UM coverage at the liability limits, punitive damages, and attorneys' fees. (Doc. 1-1 at 17–20.)

Defendants filed the present Motion seeking to bifurcate Plaintiffs' "extra-contractual claims against State Farm" from Plaintiffs' coverage claims and to stay discovery on the extra-

2

contractual claims "until this Court determines whether the [Dodge Ram Policy] provides [UM] coverage to Mr. Silva." (Doc. 28 at 1.) Plaintiffs did not respond to the Motion, and thus consent to it. *See* D.N.M.LR-Civ 7.1(b)(" The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

## ANALYSIS

Generally, a single trial is more efficient than multiple trials. *Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, No. CIV 10-0698 JB/RHS, 2012 WL 2384087, at *9 (D.N.M. June 12, 2012); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975). However, Federal Rule of Civil Procedure 42 permits the Court to order a separate trial of any claim or issue "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The Court's discretion in deciding whether to sever issues for trial is "broad" and "considerable." *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999)); *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993). Some of the factors guiding that careful exercise of discretion include judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury. *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996). Hence, the fact that the Motion is unopposed is not dispositive. *Skyline Potato Co.*, 2012 WL 2384087, at *9 ("[I]t is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." (quoting 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2388, at 92–94 (3d. ed. 2012))). "[I]n light of the general principle that a single trial tends to lessen delay, expense, and inconvenience[,]" the movant has the burden to show that bifurcation is warranted. *Belisle v. BNSF Ry. Co.,* 697 F.Supp.2d 1233, 1250 (D.Kan.2010); *Skyline Potato Co.*, 2012 WL 2384087, at *9.

The Court also has "broad discretion to stay proceedings . . . incident to its power to manage its docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010). In addition, the Court may stay discovery pursuant to Federal Rule of Civil Procedure 26(c), which for good cause shown allows the Court to limit discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). The party seeking a stay bears the burden of establishing the need for it. *Clinton*, 520 U.S. at 708.

The Court finds that judicial efficiency and conservation of judicial resources are not served by bifurcating the trial or staying discovery. Defendants' arguments to the contrary are not persuasive. *See York*, 95 F.3d at 957-58.

Defendants argue that whether the policies "provide UM coverage is a question potentially dispositive of some, if not all, of Plaintiffs' extra-contractual claims. A coverage determination in State Farm's favor will resolve Plaintiffs' breach of contract and [UIPA] claims as a matter of law." (Doc. 28 at 3.) However, not all UIPA claims are contingent on a coverage determination: "An insurer in New Mexico can act in bad faith in its handling of a claim 'for reasons other than its refusal to pay' a claim in full." *Willis v. Gov't Emps. Ins. Co.*, No. 13-280 KG/KK, 2015 WL 11181339, at *3 (D.N.M. June 17, 2015) (quoting *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 7, 41 P.3d 356, 359). Here, Plaintiffs allege that Defendants violated the UIPA by, *inter alia*, "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue," "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," and "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies." (Doc. 1 at 17–18.) Because these allegations pertain to State Farm's sale of the policies to Plaintiffs or to its

4

handling of their claim and not its failure to pay, they are not dependent on whether there is coverage under the policy. *See Haygood v. United Servs. Auto. Ass'n,* 2019-NMCA-074, ¶¶ 21-22, 453 P.3d 1235, 1242 (holding that a bad faith claim based on failure to pay depended on whether there was a contractual duty to pay whereas the plaintiff's claims that the insurer "intentionally delayed the coverage decision, intentionally failed to fairly evaluate the claim, and dishonestly handled the claim to [their] advantage" did not); *Frietze v. Allstate Ins. Co.*, No. CV 12-840 WJ/CG, 2013 WL 12333993, at *2 (D.N.M. Mar. 18, 2013) (stating that "an insurer's frequent failure 'to affirm or deny coverage of claims of insureds within a reasonable time' is a violation of the [UIPA and that an] insurer can violate [the UIPA] even while asserting a claim is not covered by the policy"); *Buccheri v. GEICO Ins. Co.*, No. 1:17-CV-00490-LF-KK, 2017 WL 3575486, at *3 (D.N.M. Aug. 17, 2017) ("Because plaintiff alleges more than a bad faith failure to pay, not all of plaintiff's extra-contractual claims are dependent on her contractual claims.").

Defendants also argue that "[t]rial of any factual issues necessary for the coverage determination and the extra-contractual claims simultaneously will only serve to confuse the jury and prejudice State Farm" because the evidence "on the two issues is completely distinct and unrelated[.]" (Doc. 28 at 5.) But State Farm's bald assertions that it will be prejudiced do not meet its burden to demonstrate why bifurcation is improper here. To support its assertions of prejudice, State Farm merely cites to *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993), *Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281 (D.N.M. 2016), *and Gentner v. Metro. Prop. & Cas. Ins. Co.*, No.18-CV-323, 2018 WL 9537731 (D.N.M. July 20, 2018). (Doc. 28 at 5.)

Those cases are readily distinguishable. In *Oulds* and *Aragon*, the plaintiffs' claims for breach of contract and bad faith were both based on the insurer's failure to pay her claim. *Oulds*, 6 F.3d at 1435; *Aragon*, 185 F. Supp. 3d at 1286. Hence, unlike here, the plaintiffs' bad faith claims

were contingent on a finding of coverage. *See id*. In addition, in both *Aragon* and *Gentner*, the court found that a single trial posed potential prejudice to the insurer because of possible introduction of the insurer's settlement offers. *Aragon*, 185 F. Supp. 3d at 1288 (stating, "When an insurer has made an offer to settle a disputed [uninsured motorist] claim, a conflict arises between the insured's right to introduce the offer in the trial of the bad faith claims and the insurer's right to exclude it when defending the . . . claim"); *Gentner*, 2018 WL 9537731, at *4–5 ("Bifurcating the bad faith claims from the [uninsured motorist]/contract claims will help to limit unfair prejudice to both parties concerning the issue of settlement offers from [the insurer], which [the p]laintiffs put directly at issue in their complaint."). Here, there is no evidence that Defendants have offered to settle this matter at this time; State Farm's position is that its policies do not cover Mr. Silva's injuries at all. In short, the factual bases for finding prejudice requiring bifurcation in those cases are not currently present in this case. *See Buccheri*, 2017 WL 3575486, at *3 (stating that the defendant's reliance on *Aragon* was misplaced "because [the plaintiff] allege[d] more than "a bad faith failure to pay claim").

Similarly, Defendants do not explain why jurors would be confused unless the issues are bifurcated. "Jurors are often asked to comprehend issues in civil litigation that are considerably more complex than the issues in this case." *Willis*, 2015 WL 11181339, at *4. "Sufficiently clear jury instructions, including limiting instructions, and clear arguments by counsel will enable jurors to understand the different sets of issues presented and thereby[] avoid any confusion or prejudice." *Id*. Defendants have not shown to the Court's satisfaction that a single proceeding would unduly prejudice Defendants or confuse the jury.

Finally, Defendants argue that the "parties would spend far less time and judicial resources only conducting UM coverage discovery without joining extra-contractual claims simultaneously,

6

which would consume considerabl[y] more resources." (Doc. 28 at 4.) Again, Defendants do not explain how simultaneous discovery will substantially increase the discovery burden. The Court notes that, in the Joint Status Report and Provisional Discovery Plan, Defendants listed only one witness—Defendant Robert Maldonado—to address State Farm's sales and claims handling practices. (Doc. 17 at 5.)

In short, based on the record now before the Court, bifurcation of, and a stay of discovery regarding, Plaintiffs' extra-contractual claims would not result in a substantial savings of the Court's and the parties' resources, and, in the event a jury finds for Plaintiffs on their contractual claims, would significantly delay the ultimate resolution of the case, require the Court to empanel two separate juries, and require witnesses to testify at two separate trials. Moreover, to the extent Plaintiffs' discovery regarding their extra-contractual claims is excessively burdensome, Federal Rule of Civil Procedure 26 provides Defendants with ample means to protect their interests.

The Court recognizes that not all of the circumstances relevant to bifurcation are static. Thus, it is possible that at a later stage in these proceedings, the Court may be persuaded to phase the trial of this matter by, for example, permitting the parties to present evidence regarding Plaintiffs' extra-contractual claims to the jury after the jury has decided Plaintiffs' coverage claims. As such, the Court's denial of Defendants' Motion will be without prejudice to their ability to seek similar relief in the future based on new information or changed circumstances.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Bifurcate and Stay (Doc. 28) is DENIED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE