**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARK SILVA AND
SANDRA SILVA,

       Plaintiffs,

v.                                                                                            Civ. No. 22-370 KK/JFR

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND
ROBERT MALDONADO,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs seek uninsured motorist coverage for serious injuries Mr. Silva suffered when an underinsured motorist intentionally battered him after running into his vehicle numerous times. Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 31) asking the Court to find that Mr. Silva's injuries sustained in this post-collision intentional battery arise from the operation, maintenance, or use of the perpetrator's underinsured motor vehicle. Plaintiffs additionally ask the Court to reform Plaintiffs' State Farm automobile insurance policy to provide uninsured motorist coverage equal to their liability limits. Having reviewed the record and the applicable law and being otherwise sufficiently advised, the Court DENIES Plaintiffs' Motion for Summary Judgment.

### FACTS AND PROCEDURAL HISTORY

Except as noted, the following facts are undisputed. On June 7, 2021, Mr. Silva, driving a Dodge Ram, entered one of the drive-through lanes of the McDonald's on Pacheco Street in Santa Fe, New Mexico. (Docs. 31 at 10, 15, 39 at 4.) He pulled next to a Hyundai driven by Marcellus

Sawyer. (Docs. 31 at 10, 15; 39 at 4; 31 at 21.) Mr. Sawyer and Mr. Silva exchanged words from

their vehicles, with Mr. Sawyer asking Mr. Silva if he felt "like being shot today." (Docs. 31 at 10,

15, 18; 39-3 at 2.) After receiving their orders, Mr. Silva began to drive away but was cut off when

Mr. Sawyer pulled the Hyundai in front of the Dodge Ram. (Docs. 31 at 10–11, 15; 39 at 4.) Mr.

Sawyer drove slowly in front of Mr. Silva and then stopped his vehicle at a stop sign, rolled down

his window, and began speaking to a woman walking a dog. (Docs. 31 at 19, 39-3 at 4.) Mr. Silva

stopped behind the Hyundai and Mr. Sawyer "showed [him] the middle finger of one hand out his

window." (Docs. 31 at 11, 15; 39 at 4.) Mr. Silva waited behind the Hyundai for about 45 seconds

to a minute and then maneuvered around Mr. Sawyer's vehicle onto "Pacheco Street trying to

leave." (Docs. 31 at 11, 15; 39 at 4.) As he did so, Mr. Sawyer hit him from behind. (Docs. 31 at

11, 15; 39 at 4.) Mr. Silva "slammed the brakes" and Mr. Sawyer rearended the Dodge Ram again.

(Docs. 31 at 11, 15; 39-3 at 4; 39 at 4.) Mr. Silva pulled into the Shell Gas Station across Pacheco

Street from the McDonald's and stopped, and Mr. Sawyer drove the Hyundai into the front right

wheel well of the Dodge Ram, rendering the Dodge Ram's steering inoperable. (Docs. 31 at 11,

15; 39 at 4.) Mr. Silva testified in his deposition that when Mr. Sawyer pulled into the Shell Gas

Station parking lot, Mr. Sawyer said that he wanted to call the police. (Docs. 31 at 20; 39-3 at 5.)

Both Mr. Silva and Mr. Sawyer got out of their vehicles and walked toward each other.

(Docs. 31 at 11, 15, 21; 39-3 at 5; 39 at 5.) When Mr. Silva was not looking, Mr. Sawyer "sucker

punched" him in the head, causing multiple fractures to his face, and, while Mr. Silva was on the

ground, broke Mr. Silva's right ankle. (Docs. 31 at 11, 15–16; 39 at 5.) Mr. Silva testified that

between 15 and 30 seconds elapsed between the time he turned off the ignition and Mr. Sawyer

battered him. (Doc. 31 at 22:6-9.) Mr. Sawyer then left the scene. (Docs. 31 at 16; 39 at 5.)

Mr. Sawyer was insured by GEICO, which paid Plaintiffs its policy limits of $25,000 with the consent of State Farm. (Doc. 1-1 at 3, 63–64.) Plaintiffs submitted a claim to State Farm seeking coverage under the "Uninsured and Unknown Motorist" ("UM") provisions of four State Farm policies.[1] (Doc. 1-1 at 13.) State Farm denied the claim because it determined that Mr. Silva's injuries "did not arise out the ownership, maintenance, or use of an uninsured motor vehicle," as required for coverage under the policies. (Docs. 1-1 at 67–68;  39 at 6; 39-4 at 3 (stating that State Farm will pay damages for "bodily injury . . . caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle").)

When their claim was not paid, Plaintiffs filed a complaint against State Farm and State Farm Agent Robert Maldonado (collectively, "Defendants") in the First Judicial District Court, Santa Fe County, on January 19, 2022. (Doc. 1-1.) In addition to seeking payment for Mr. Silva's injuries, Plaintiffs allege that Defendant Maldonado failed to properly inform them that they were entitled to "purchase [uninsured and underinsured motorist] coverage in an amount equal to the policies['] liability limits" and erroneously "informed Plaintiff Silva that he did not need UM/UIM coverage on the 2001 Dodge Ram because it 'ports' from the other . . . policies." (*Id.* at 13.) Plaintiffs allege, "Had the Defendants complied with New Mexico law, the Plaintiffs Silva would have available to them the total sum of $400,000 in underinsured motorists coverage" and seek "reformation of the policies to reflect New Mexico law and total available coverage to them of $400,000." (*Id.*) Plaintiffs also allege that Defendants violated the New Mexico Unfair Insurance Practices Act ("UIPA") by, *inter alia*, "misrepresenting to insureds pertinent facts or policy

---

[1] The four policies listed in the Complaint are: Policy Number 206 1554-A08-31A (Dodge Ram); Policy Number 206 1551-A08-31 (Ford Fusion); Policy Number 206 1550-A08-31B (Ford Escape); Policy Number 206 1552-A08-31 (Volkswagen Jetta). (Doc. 1-1 at 7, 65.)

provisions relating to coverages at issue," "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," and "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies." (*Id*. at 17–18.)

The parties agree that Mr. Silva signed State Farm's "Acknowledgement of Coverage Rejection" forms related to the Ford Fusion and Ford Escape. (Docs. 31 at 10, 14–15; 39 at 4.) However, Plaintiffs assert that the signature on the Acknowledgement of Coverage Rejection form for the Dodge Ram (the "Dodge Ram Acknowledgement Form") is not Mr. Silva's. (Doc. 31 at 10, 14, 23, 26.)

State Farm removed the matter to this Court asserting jurisdiction based on diversity of the parties. (Doc. 1 at 2.) Plaintiffs then filed the Motion for Summary Judgment. The Court held a hearing on the Motion on July 11, 2023. (Docs. 42, 44.)

## DISCUSSION

Plaintiffs seek summary judgment declaring that 1) Mr. Silva's injuries are covered by their State Farm UM policies because they arise from the "operation, maintenance, or use" of Mr. Sawyer's Hyundai and 2) the Dodge Ram policy must be reformed to provide uninsured and underinsured motorist coverage equal to the policy liability limits. (Doc. 31 at 7, 9, 12.) Defendants oppose summary judgment as to the first issue and argue that they need further discovery to respond to Plaintiffs' assertions regarding reformation of the Dodge Ram policy. (Docs. 39 at 3, 8; 39-2.)

## A.  Legal Standards Governing Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A dispute is genuine when 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party[,]' and a fact is material when it 'might affect the outcome of the suit under the governing substantive law.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact and its entitlement to a judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant bears the burden of proof at trial, it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

In deciding a summary judgment motion, the Court will "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *Martin v. Kansas,* 190 F.3d 1120, 1129 (10th Cir.1999)). However, "[w]here

different, ultimate inferences may be drawn from the evidence presented by the parties, the case is not appropriate for summary judgment." *Dayton Hudson Corp. v. Macerich Real Est. Co.*, 812 F.2d 1319, 1322–23 (10th Cir. 1987). In addition, "questions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial[.]" rather than summary judgment. *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980); *Lawrence v. Moss*, 639 F.2d 634, 638–39 (10th Cir. 1981) (holding that summary judgment was improper where intent was at issue and stating, "Intent is an intangible factor best left for determination of the fact-finder after a full trial").

Under Federal Rule of Civil Procedure 56(d), "the court may . . . defer considering [a summary judgment] motion or deny it" if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The "general principle" of this rule is that summary judgment is inappropriate "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson,* 477 U.S. at 250 n.5).

When exercising its diversity jurisdiction, the Court applies the law of the forum state. *State Farm Mut. Auto. Ins. Co. v. Blystra*, 86 F.3d 1007, 1010 (10th Cir. 1996). Hence, the Court must "apply the most recent statement of state law by the" New Mexico Supreme Court. *Wood v. Eli Lilly & Co*., 38 F.3d 510, 513 (10th Cir. 1994).

**B.  Analysis**

**1.  Genuine Disputes of Material Fact Preclude Summary Judgment on Whether Mr. Silva's Injuries Arise from "Operation, Maintenance, or Use" of the Hyundai.**

To recover under their State Farm policies, Plaintiffs must show that Mr. Silva's injuries arose out of the "ownership, maintenance, or use" of an uninsured or underinsured vehicle.

(Doc. 39 at 6; 39-4 at 3 (stating that State Farm will pay damages for "bodily injury . . . caused by an accident arising out of the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle"); *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000) ("A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred[.]"); *cf. Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 6, 127 P.3d 1111, 1113.

Under New Mexico law, to determine whether "intentional conduct and its resulting harm arises out of the use of an uninsured vehicle," courts consider (1) "whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm;" (2) "whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered;" and (3) "whether the 'use' to which the vehicle was put was a normal use of that vehicle." *Britt v. Phoenix Indem. Ins. Co.*, 1995-NMSC-075, ¶ 15, 907 P.2d 994, 999–1000; *see Blystra*, 86 F.3d at 1011 (discussing *Britt*). Each question must "be answered in the insured's favor before coverage may be found[.]" *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 12, 453 P.3d 1235, 1239; *see Komadina v. USAA Cas. Ins. Co.*, No. CV 21-1143 MIS/SCY, 2023 WL 372823, at *2 (D.N.M. Jan. 24, 2023) ("For uninsured motorist coverage to exist, each of these three factors must favor the claimant."), *report and recommendation adopted,* No. 21-CV-1143 MIS/SCY, 2023 WL 1817284 (D.N.M. Feb. 8, 2023).

The Court finds that, assuming the Hyundai was an active accessory to Mr. Sawyer's attack, Plaintiffs have not shown the absence of a genuine dispute of fact related to the second factor: whether an act of independent significance broke the causal link between the uninsured vehicle and the injuries. *Britt*, 1995-NMSC-075, ¶ 15, 907 P.2d at 1000.

An "intentional tort alone does not constitute an act of independent significance sufficient to break the causal link between an assailant's use of his vehicle and the victim's injuries." *Blystra*, 86 F.3d at 1013. Rather, the assailant must "do something to disassociate the intentional tort from his otherwise normal use of the vehicle[.]" *Id*. Disassociation "might occur if the assailant stops his vehicle and commits the tort after leaving the vehicle." *Id*.

However, if an assailant forms an intent to commit a tort and uses a vehicle as an "active accessory" to the tort, the assailant's exit from the vehicle before the intentional tort does not break the causal chain. For example, in *Britt*, the plaintiff "was a passenger in a vehicle . . . when it was struck from behind by another vehicle." *Britt*, 1995-NMSC-075, ¶ 2, 907 P.2d at 995. Both the plaintiff and the assailants got out of their vehicles "and a physical altercation ensued." *Id*. As the plaintiff "retreated to [his] vehicle, one of the men pursued him and stabbed him through the open passenger-door window." *Id*. The Court held that whether "the attack by the passengers was an act of independent significance sufficient to break" the causal chain between the uninsured vehicle and the tort was dependent on whether "the driver of the uninsured vehicle intentionally collided with" the plaintiff's vehicle to facilitate an attack on the plaintiff. *Id*. ¶ 16, 907 P.2d. at 1000.

As applied to this case, the causal chain between the Hyundai and the battery would not be broken by Mr. Sawyer's exit from the Hyundai or the battery if Mr. Sawyer ran into the Dodge Ram intending to batter Mr. Silva. Conversely, the battery would be an act of independent significance that broke the causal chain between the Hyundai and the battery if Mr. Sawyer developed the intent to batter only after he got out of the Hyundai. *See Haygood*, 2019-NMCA-074, ¶ 16, 453 P.3d at 1241 (stating that "had the intent to attack (in *Britt*) developed independently of the collision, the attack would have severed any connection between the injury and the earlier

qualifying use of the vehicle"); *Komadina*, 2023 WL 372823, at *6 (stating that "if the assailant . . . developed the intent to shoot [the p]laintiff after using the vehicle to arrive at the [scene of the attack], the assault broke any causal link between the use of the uninsured vehicle . . . and [the p]laintiff's injuries").

The Court finds there is a genuine question of fact about when Mr. Sawyer formed the intent to batter Mr. Silva. The undisputed facts establish that the encounter between Mr. Silva and Mr. Sawyer began in the McDonald's drive-through lane and continued while Mr. Silva pulled onto Pacheco Street and then into the Shell Gas Station. Mr. Sawyer hit the Dodge Ram three times in close succession, the final time hard enough to disable the Dodge Ram's steering. A reasonable factfinder might infer from these facts that Mr. Sawyer formed an intent to batter Mr. Silva before getting out of the Hyundai and followed him into the gas station and intentionally disabled the Dodge Ram to facilitate the attack.

However, as Plaintiffs acknowledge, under New Mexico law, both men were required to "immediately stop the[ir] vehicle[s] at the scene of the accident or as close thereto as possible" after a collision. (Doc. 40 at 1–2); N.M. Stat Ann. §§ 66-7-201, 202. And Mr. Silva testified in his deposition that when Mr. Sawyer pulled into the Shell Gas Station parking lot, Mr. Sawyer said he wanted to call the police. (Doc. 39-3 at 5.) In addition, both men got out of their cars and walked toward each other. Viewed in the light most favorable to Defendants, these facts support an inference that Mr. Sawyer drove into the Shell Gas Station lot to exchange information about the series of collisions and wait for the police, i.e., that he did not form an intent to batter Mr. Silva until he was out of the Hyundai. "Where different ultimate inferences may properly be drawn the

case is not one for summary judgment." *Sec. Nat. Bank v. Belleville Livestock Comm'n Co.*, 619 F.2d 840, 847 (10th Cir. 1979).

Additionally, determination of Mr. Sawyer's intent depends on "intangible factors, including witness credibility," and is generally unsuited for summary judgment. *Prochaska*, 632 F.2d at 851; *Lawrence*, 639 F.2d at 638. Because conflicting inferences can be drawn from the evidence adduced by Plaintiffs and questions of intent are best resolved at trial, the Court finds that Plaintiffs have not met their burden to establish that they are entitled to summary judgment and will, therefore, deny the Motion for Summary Judgment on this issue. *See Bldg. Mart, Inc. v. Allison Steel Mfg. Co.*, 380 F.2d 196, 199 (10th Cir. 1967) (noting "the impropriety of summary judgment on the issue of intent when the evidence was susceptible of conflicting inferences").

Because genuine disputes of fact preclude a finding on the second factor of the *Britt* analysis, the Court need not address the third factor, i.e., "whether the 'use' to which the vehicle was put was a normal use of that vehicle." *Britt*, 1995-NMSC-075, ¶ 15, 907 P.2d at 1000; *see Haygood*, 2019-NMCA-074, ¶ 12, 453 P.3d at 1239 (stating that all three factors must weigh in the insured's favor before coverage may be found).

**2. Plaintiffs' Motion for Summary Judgment on Their Claim for Reformation of the Dodge Ram Policy is Premature.**

Plaintiffs also seek summary judgment on their claim that Defendants failed to obtain a valid rejection of uninsured and underinsured motorist coverage for the Dodge Ram and, therefore, the Dodge Ram policy should be reformed to include $100,000 in such coverage.[2] (Doc. 31 at 8–

---

[2] In the Complaint, Plaintiffs seek reformation of all four policies listed in the Complaint. (Doc. 1-1 at 19.) However, in the Motion for Summary Judgment, Plaintiffs seek summary judgment only as to reformation of the Dodge Ram policy. (Doc. 31 at 1 ("[O]ne policy should be reformed[.]"), 9 ("The policy on the Dodge Ram should be reformed to include $100,000 in UM coverage for" Mr. Silva.)). Defendants' argument that Plaintiffs have abandoned their

9); *see Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 36, 245 P.3d 1214, 1225 (holding that the "proper remedy" for an insurer's failure "to obtain valid rejections of [uninsured and underinsured motorist] coverage" is reformation of the plaintiff's "automobile liability policies to provide [such] coverage equal to the liability limits"). In support of this argument, they attached Mr. Silva's affidavit and deposition testimony stating that he did not sign the Dodge Ram Acknowledgement Form. (Docs. 31 at 14, 23.)

Defendants argue that Plaintiffs' request for reformation of the Dodge Ram policy to increase the UM/UIM limits is moot because, under *Britt*, Mr. Silva's injuries are not covered by the policy. (Doc. 39 at 3.) They further argue, if the Court finds that Mr. Silva's injuries are covered, they need "to hire a handwriting expert to evaluate whether the signature on the [Dodge Ram Acknowledgement Form] is indeed Mr. Silva's signature." (Docs. 39 at 3; 39-2 at 1); *see* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to . . . take discovery"). In their Reply, Plaintiffs state, "The Court should permit State Farm to hire a handwriting expert, should they wish to do so." (Doc. 40 at 3.)

Given the parties' apparent agreement that additional discovery is warranted on this issue, Plaintiffs' motion for summary judgment is premature. Therefore, the Court will deny the Motion for Summary Judgment as to this issue without prejudice to filing a renewed motion when the issue is ripe.

---

claim for coverage under the Volkswagen policy is therefore immaterial to the Motion for Summary Judgment. *See* (Doc. 39 at 2.)

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs'

Motion for Summary Judgment is DENIED without prejudice.

**IT IS SO ORDERED.**

**KIRTAN KHALSA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

12